UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                              :
ALAN J. TREINISH, BANKRUPTCY                  :        CASE NO. 1:17-CV-1371
TRUSTEE FOR THE CHAPTER 7                     :
BANKRUPTCY ESTATE OF                          :
DONNESHA V. HOUSTON                           :
                                              :
            Plaintiff,                        :
                                              :
vs.                                           :        OPINION & ORDER
                                              :        [Resolving Doc. No. 9]
BORROWERSFIRST, INC.                          :
                                              :
            Defendant.                        :
                                              :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

       Plaintiff Alan Treinish, bankruptcy trustee for the estate of Donnesha V. Houston, sues

Defendant BorrowersFirst, Inc. ("BorrowersFirst"),[1] for violations of the Telephone Consumer

Practices Act (TCPA)[2] and the Ohio Consumer Sales Practices Act (OCSPA).[3] Plaintiff claims

that, without consent, Defendant called Houston numerous times attempting to collect on a debt.[4]

       Defendant moves this Court to compel arbitration, alleging that Houston's loan contract

requires Plaintiff to arbitrate these claims.[5]

       For the following reasons, this Court **GRANTS** Defendant's motion to compel

arbitration.

---

[1] Doc. 1-1.
[2] 47 U.S.C. § 227.
[3] Ohio Rev. Code Ann. §§ 1345.01-1345.99 (West 2012).
[4] *See* Doc. 1-1 at 2-7.
[5] Doc. 9. Plaintiff opposes. Doc. 11. Defendant replies. Doc. 12.

## I. Background

In late 2015, Donnesha Houston took out a personal loan from BorrowersFirst.[6] As part of the loan agreement, Houston signed a contract containing a mandatory arbitration clause.[7] That contract also contained a TCPA consent clause, which allowed BorrowersFirst and related entities to call her cell phone.[8]

During the fall of the next year, Houston's financial situation worsened, and she defaulted on the loan.[9] Around the same time, she called BorrowersFirst and withdrew her consent to receiving BorrowersFirst's calls.[10] In December 2016, Houston filed for Chapter 7 Bankruptcy, and the Bankruptcy Court appointed Plaintiff Alan Treinish as trustee for Houston's estate.[11]

Plaintiff alleges that BorrowersFirst continued to place unsolicited calls to Houston's cell phone after she terminated the loan agreement.[12] He argues that Houston terminated the agreement in three ways: (1) when she revoked her consent to be called; (2) when she defaulted on the loan; and (3) when she filed for bankruptcy.[13] Plaintiff argues that Houston's terminating the agreement frees him from the agreement's arbitration provision because the right to dun Houston did not arise under the contract.[14]

Defendant argues that the Court should not reach the merits of Plaintiff's claim, because the arbitration provision survives any alleged termination and compels Plaintiff to arbitrate.[15]

---

[6] Doc. 11 at 2.
[7] *See* Doc. 9 at 4.
[8] *See id.*; *see also* Doc. 9-1 at 18.
[9] Doc. 11 at 2.
[10] *Id.*
[11] *Id.*
[12] Doc. 1-1 at 2-7.
[13] Doc. 11 at 3-6.
[14] *Id.*
[15] *See generally* Doc. 9.

The Court agrees.

## II. Legal Standard

The Federal Arbitration Act (FAA)[16] provides that where a "party [is] aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [it] may petition" for an order compelling arbitration and staying proceedings in federal court "until such arbitration has been had in accordance with the terms of the agreement."[17] The FAA manifests a strong "federal policy favoring arbitration agreements," and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."[18]

In the Sixth Circuit, courts apply a four-pronged test to determine whether to grant a motion to compel arbitration:

> [F]irst, [a court] must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.[19]

## III. Analysis

### A. Validity of the Arbitration Provision

Plaintiff Treinish does not contest the validity of the contract, or the arbitration provision within it. Nor does he allege that Houston was either unaware of the arbitration provision, or that she followed the opt-out procedure detailed in the contract. The Court finds the arbitration provision to be valid and enforceable.

---

[16] 9 U.S.C. § 1, et seq.

[17] 9 U.S.C. §§ 3 & 4.
[18] *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).
[19] *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).

## B. Scope of the Arbitration Provision

Treinish argues that his TCPA and OCSPA claims are not arbitrable because "BorrowersFirst had no vested contractual right to call Houston's cell phone … after she terminated the contract."[20]  In support of this contention, Treinish relies on a recent Sixth Circuit decision, *Stevens-Bratton v. TruGreen, Inc.*[21]

In that case, Stevens-Bratton signed a contract for TruGreen to provide lawn-care services, which contained a clause permitting TruGreen to call him about "possible future services."[22] About six months after TruGreen finished providing lawn-care services under the contract, they began using an automatic dialing system to call Stevens-Bratton about providing additional services.[23]

*Stevens-Bratton* is different from this case. As an initial matter, the arbitration provision in *Stevens-Bratton* did not have a survival clause.[24]  A survival clause would have kept the arbitration provision in force after the contract.[25] As such, in *Stevens-Bratton*, the Sixth Circuit analyzed a "completely expired agreement" to determine whether the dispute arose under the contract.[26] When an agreement is completely expired, courts do not apply the presumption in favor of arbitration wholesale, as that could "make limitless the contractual obligation to arbitrate."[27]

---

[20] Doc. 11 at 3.
[21] 675 F. App'x 563 (6th Cir. 2017).
[22] *Id.* at 569.
[23] *Id.* at 566.
[24] *Id.* at 568.
[25] *See, e.g.*, *Huffman v. Hilltop Cos., LLC*, 747 F.3d 391, 393-94 (6th Cir. 2014) (discussing the interplay between a survival clause and an arbitration provision in an employment contract).
[26] *Stevens-Bratton*, 675 F. App'x. at 567.
[27] *Id.* at 568 (quoting *Litton Fin. Printing Div., a Div. of Litton Bus. Sys., Inc. v. NLRB*, 501 U.S. 190, 209 (1991)).

Here, however, BorrowersFirst's arbitration provision contains an explicit survival clause.[28] For that reason, this contract is not "completely expired,"[29] and the full presumption in favor of arbitration applies.

The survival clause in the contract at issue here reads, "[t]his Arbitration Provision shall survive (i) suspension, termination, revocation, closure, or amendments to this Agreement and the relationship of the parties and/or the Lender Parties; [and] (ii) the bankruptcy or insolvency of any party or other person."[30] As such, even assuming that Houston or Treinish did unilaterally terminate the agreement, the plain language of the contract states that the parties will nevertheless arbitrate any covered claims.

Additionally, the contract language allowing TruGreen to call Stevens-Bratton was ambiguous. The Sixth Circuit found that a reader could interpret that language[31] to either terminate Stevens-Bratton's consent to be called when the services TruGreen provided under the contract ended, or to continue in perpetuity.[32]

Because of this ambiguity, the Sixth Circuit applied the principle that a court should interpret an ambiguous provision against its drafter.[33] Because TruGreen drafted the contract, the Court read the contract in Stevens-Bratton's favor and concluded that TruGreen's right to call Stevens-Bratton did not survive the end of the contract.[34] As a result, that right could not trigger the arbitration clause.[35]

---

[28] *See* Doc. 9-1 at 14-15.
[29] *Cf. Stevens-Bratton,* 675 F. App'x at 568.
[30] Doc. 9-1 at 15.
[31] Specifically, the language allowing TruGreen to call Stevens-Bratton about "possible future services." *Stevens-Bratton,* 675 F. App'x at 569.
[32] *Id.* at 570-71.
[33] *Id.* at 570.
[34] *Id.*
[35] *Id.* at 571.

In contrast, the language in BorrowersFirst's arbitration clause is unambiguous.[36] It is virtually all-encompassing in the breadth of potential disputes that it covers.[37]

The arbitration provision's sweeping terms plainly encompass Plaintiff's claims. Houston agreed to arbitrate any claims that "relat[e] to or aris[e] out of this Agreement … and/or the activities or relationships [between the borrower and lender] that involve, lead to, or result from [the Agreement]."[38] The contract contains an explicit clause discussing the possibility that BorrowersFirst would call Houston regarding the loan.[39]

Consequently, making calls to Houston, whether with or without her consent, concerning collection on this loan is plainly an "activit[y]" that "result[s] from" this agreement.[40] Therefore, Plaintiff must arbitrate these claims.

Additionally, nothing about Houston's bankruptcy, or Treinish's status as a bankruptcy trustee, suggests that the Court should not compel arbitration. As discussed above, the arbitration clause's plain language states that it will survive a bankruptcy filing.[41] Moreover, courts in this circuit and others hold that a bankruptcy trustee stands in the shoes of the debtor with regard to claims such as these, and is therefore held to the same mandatory arbitration standards as the

---

[36] *See M & G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926, 933 (2015) ("Where the words of a contract in writing are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent.") (quoting 11 R. Lord, Williston on Contracts § 30:6, p. 108 (4th ed. 2012)); *see also Karl's Sales and Service, Inc. v. Gimbel Bros., Inc.*, 592 A.2d 647, 650 (N.J. Super. Ct. App. Div. 1991) ("[W]here the terms of a contract are clear and unambiguous there is no room for interpretation or construction and the courts must enforce those terms as written."). Plaintiff concedes that the choice of law provision in the contract, which chooses New Jersey law, is valid. *See* Doc. 9-1 at 13.

[37] *See* Doc. 9-1 at 14 (defining "claim" and stating that "[t]he scope of this Arbitration Provision is to be given the broadest possible interpretation that is enforceable.").

[38] *Id.* at 14.

[39] *See id.* at 11 (stating that Houston "explicitly consents to receiving calls and messages").

[40] *See Simon v. Pfizer Inc.*, 398 F.3d 765, 775 (6th Cir. 2005) ("When faced with a broad arbitration clause . . . a court should follow the presumption of arbitration and resolve doubts in favor of arbitration. . . . Indeed, in such a case, only an express provision excluding a dispute . . . will remove the dispute from consideration by the arbitrators.") (citations and internal quotation marks omitted).

[41] *See* Doc. 9-1 at 14.

debtor.[42] Because the Court would compel Houston to arbitrate these claims, Treinish must

arbitrate them as well.

## C. Congressional Intent

Neither the text nor the history of the TCPA indicates that Congress intended to make

TCPA claims nonarbitrable.[43] Indeed, multiple Sixth Circuit courts have compelled arbitration of

TCPA claims.[44]

Additionally, this Court has previously found, and the Court of Appeals has affirmed, that

OCSPA claims are also arbitrable.[45]

## D. All of Plaintiff's Claims are Arbitrable

Because all of Plaintiff's claims are subject to arbitration, the Court does not need to stay

these proceedings.

---

[42] *See In re Cooker Restaurant Corp.*, 292 B.R. 308, 311-12 (S.D. Ohio 2003) (noting that multiple courts of appeals have held that a trustee stands in the shoes of a debtor for the purposes of a mandatory arbitration clause, and ultimately holding the same); *see also Javitch v. First Union Securities, Inc.*, 315 F.3d 619, 625 (6th Cir. 2003) (compelling a bankruptcy receiver to arbitration through analogy to a bankruptcy trustee); *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1153-54 (3d Cir.1989) (compelling a bankruptcy trustee to arbitrate claims based on a mandatory arbitration contract signed by a debtor).

[43] *See Drozdowski v. Citibank, Inc.*, 2016 WL 4544543, at *9 (W.D. Tenn. Aug. 31, 2016) (finding that numerous courts have examined the issue of Congress's intent concerning arbitrability of TCPA claims and none have found that Congress intended TCPA claims to be nonarbitrable).

[44] *See, e.g., id.*; *Whaley v. T-Mobile, USA, Inc.*, No. 13-31, 2013 WL 5155342, at *2-3 (E.D. Ky. Sept. 12, 2013).

[45] *See Stout v. J.D. Byrider*, 228 F.3d 709 (6th Cir. 2000).

## IV. CONCLUSION

For the reasons stated above, the Court **DISMISSES** this action and **GRANTS**

Defendant's motion to compel arbitration.


IT IS SO ORDERED.


Dated: September 8, 2017                    s/_____*James S. Gwin*_____
                                            JAMES S. GWIN
                                            UNITED STATES DISTRICT JUDGE